Robert J. Lauson, Esq., No. 175,486
LAUSON & TARVER LLP
880 Apollo Street, Suite 301
El Segundo, CA 90245
Phone: (310) 726-0892
Fax: (310) 726-0893
Email: bob@lauson.com

Attorney for Plaintiff
GREEN PLANET, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GREEN PLANET, INC., a California Corporation,**<br><br>               **Plaintiff,**<br><br>**v.**<br><br>**INTERNATIONAL IP HOLDINGS, LLC, a Michigan Limited Liability Company; and DOES 1-9, inclusive,**<br><br>               **Defendants.** | **CASE NO. 5:13-CV-01565-BRO-(DTBx)**<br><br>**GREEN PLANET'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR TRANSFER; DECLARATION OF ROBERT J. LAUSON IN SUPPORT THEREOF**<br><br>**Date: November 4, 2013**<br>**Time: 1:30 PM**<br>**Place: Courtroom 14** |

/ / /

/ / /

/ / /

# **TABLE OF CONTENTS**

I.      Introduction ................................................................................ 1

II.     Factual Background..................................................................... 1

III.    Defendant's History Of Frivolous Claims At The TTAB.............. 4

IV.     Green Planet Files This Action; Defendant Opposes, Files In Michigan ........ 5

V.      Applicable Case Law.................................................................. 7

VI.     There Was No Direct, Specific, Credible Threat Of Imminent Litigation ...... 9

VII.    The California Action Can Resolve All The Issues ..................... 11

VIII.   The Michigan Litigation Was Not Imminent............................... 12

IX.     Defendant Failed To Meet Its Burden For A Convenience Transfer ............ 12

X.      Conclusion............................................................................... 18

1 <u>**TABLE OF AUTHORITIES**</u>

2 <u>**Cases**</u>

3 *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128 (S.D.N.Y.

4       1994) .......................................................................................................... 8, 9

5 *Abbott Labs, Inc. v. Mead Johnson & Co.*, 198 U.S. District LEXIS 12371

6       (C2980157) (S.D. Ohio 1998) ..................................................................... 8

7 *Allstar Marketing Group v. Your Store Online, LLC*, 666 F. Supp. 2d at 1133 ...... 16

8 *Azarm v. $1.00 Stores Servs. Inc.*, 2009 U.S. Dist. LEXIS 47179

9       (M.D. Tenn. 2009).......................................................................................... 15

10 *B.E. Technology, LLC, v. Facebook, Inc.*, 2013 U.S. Dist. LEXIS 97490 ............. 16

11 *California Writer's Club, v. Sonders*, 2011 U.S. Dist. LEXIS 113699.............. 13, 17

12 *Champagne Louis Roederer v. J. Garcia Carriom, S.A.*, 569 F.3d 855(8th Cir.

13       2009) ................................................................................................................ 6

14 *Davis v. Social Serv. Coordinators*, 2013 U.S. Dist. LEXIS 118414 (E. D. Cal.

15       2013)................................................................................................................ 15

16 *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834

17       (9th Cir. 1986) ........................................................................................ 12, 13

18 *E&J Gallo Winery v. F&P S.p.A.*, 899 F. Supp. 465, 466 (E.D. Cal. 1994)...... 12, 14

19 *Esperson v. Trugreen Ltd.*, 2010 U.S. Dist. LEXIS 114500, 2010 WL 4362794

20       (W.D. Tenn. 2010) ........................................................................................ 14

21 *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086 (N.D. Cal. 2002) 14

22 *Genetech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931 (Fed. Cir. 1993) ............................. 9

23 *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)........................................................ 13

24 *Guthy-Renker Fitness LLC v. Icon Health & Fitness LLC*, 179 F.R.D. 264 (C.D.

25       Cal. 1998)............................................................................................ 8, 9, 11

26 *Innovation Ventures LLC v. N.V.E., Inc.*, 694 F.3d 723 (6th Cir., Sep. 13, 2012)...... 4

27 *Invitrogen Corp. v. GE*, 2009 U.S. Dist. LEXIS 9127 (E.D. Tex. 2009)................. 16

28 *Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) ............................... 15

*Los Angeles Memorial Coliseum Comm'n v. National Football League*, 89 F.R.D. 497 (C.D. Cal. 1981) ................................................................................... 14

*Luigino's, Inc v. Stouffer Corp.*, 170 F.3d 827 (8th Cir. 1999) ....................................

*M.D. Beauty, Inc. v. Dennis F. Gross M.D.*, Case No. C03-3082 SBA .................... 9

*Mead Data Central, Inc v. Toyota Motor Sales, USA Inc.*, 875 F.2d 1026 (2d Cir. 1989) ................................................................................................................ 7

*Nabisco v. Warner –Lambert*, 220 F.3d 43 (2d Cir. 2000) ........................................ 5

*Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002 (8th Cir. 1993) 12

*Reed Elsevier, Inc. v. Innovator Corp.*, 105 F. Supp. 2d 816 (S.D. Ohio 2000) ...... 13

*Roberts Metals, Inc. v. Florida Props. Mktg. Grp., Inc.*, 138 F.R.D. 89 (N.D. Ohio 1991) ................................................................................................................ 15

*Tamashiro v. Harvey*, 487 F. Supp. 2d 1162 (D. Haw. 2006) ................................ 15

*Ward v. Follett Corp.*, 158 F.R.D. 645 (N.D. Cal. 1994) ........................................ 6

*Xoxide, Inc. v. Ford Motor Co.*, 448 F. Supp. 2d 1186 (C.D. Cal. 2006) ............ 9-11

**Statutes**

28 U.S.C. §1404(a) ................................................................................................. 12

**Other Sources**

C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE, §§ 3853-54 ................................................................................................. 18

J. Thomas McCarthy, MCCARTHY ON TRADEMARKS, § 24:117 ............................. 7

## I.   Introduction

Green Planet hereby opposes the motion to dismiss or transfer.  Defendant's assertions that Green Planet's complaint was a "race to the Courthouse," solely a preemptive strike, etc. are incorrect.  Defendant's letter to Plaintiff at issue here, asserting its rights in 5 HOUR ENERGY and contending that 8 HR BUZZ was allegedly infringing, did not include any direct, specific threat of imminent litigation because Defendant did not intend to sue.  It invited negotiations and set a deadline for response a few days before the due date to oppose Green Planet's trademark application.  Green Planet saw the 19 frivolous oppositions Defendant had filed, and made observations.  The contention in the opposition included that the opposition could not possibly resolve all the issues between the parties, and that unless Green Planet initiated a federal court case it would be facing uncertainty for a prolonged time period which would be harmful.

Accordingly, Green Planet filed its declaratory judgment action, and a few days later Defendant, as expected, opposed the trademark application.  Then about 3 weeks later, Defendant filed its infringement action in Michigan, as a reaction to Green Planet's lawsuit.  In actuality, it is Defendant who is engaging in forum shopping, attempting to use this Court to regain the home forum.  Moreover, Defendant's motion to transfer falls woefully short of providing the detailed, particularized showing necessary to justify moving the case.  For these reasons, as explained herein, Defendant's motion should be denied in its entirety.

## II.   Factual Background

Plaintiff Green Planet, located in Riverside, California and in business since 2004, sells a wide variety of products to convenience stores nationwide.  In early November, 2012, Green Planet rolled out a new product, its 8 HR BUZZ energy shots in plastic pouches.  Lauson Decl., para. 2, Ex. A.  Green Planet chose the mark because 8 hours is the standard work day, and the product would help keep

1   customers alert during an 8 hour work day.

2

3

4

5

6

7

8   

9

10

11

12

13

14

15

16   On November 14, 2012 Green Planet filed a use-based federal application to

17   register its mark.  *Id*., para. 3, Ex. B.

18

19

20

21   

22

23

24

25   The Examiner at the U.S. Patent & Trademark Office (PTO), aware of all the

26   5 HOUR ENERGY registered marks, approved the application.  *Id*. The

27   photographs below show Defendant's 5 hour shot product and how it is displayed

28   for sale.

1    Based on Green Planet's information and belief,  Defendant's product is only
2    sold in small bottles.



15    On June 6, 2006, Defendant requested an extension-of-time to potentially
16    challenge the application, saying it needed time to investigate the matter.  Lauson
17    Decl., para. 4, Ex. C.  The extension request was automatically granted by the
18    PTO's Trademark Trial & Appeal Board (TTAB), and notice provided to Green
19    Planet stating the new deadline to oppose was September 4, 2013.  *Id*.

20    On August 16, 2013, Oakland Law Group, Defendant's in house law firm,
21    sent a letter to Green Planet and its undersigned counsel asserting its trademark
22    rights in the words 5 HOUR ENERGY and a "Color Fade" trade dress.  *See*
23    Complaint filed Aug. 29, 2013, First-Amend Complaint filed Aug. 29, 2013, both at
24    Ex. A.  Defendant's attorneys objected to Green Planet's use of 8 HR BUZZ and
25    allegedly similar packaging, asserting the same is unlawful, and objected to its
26    pending trademark application.  *Id*.

27    The letter went on to say "IIPH prefers an amicable resolution to this matter,"
28    but  made  various  demands  that  Green  Planet  cease-and-desist,  abandon  its

trademark application, provide an accounting, etc., and preserve all evidence. *Id.* The letter concluded: "If you share our client's desire to avoid litigation, please contact me within the next fourteen (14) days to confirm your intention to comply with these conditions." *Id.*

### III.   Defendant's History of Frivolous Claims At The TTAB

Defendant pursues groundless trademark claims at the Trademark Trial & Appeal Board (TTAB) of the U.S. Patent & Trademark Office (PTO),[1] and relies upon Applicants, having limited resources, giving up. That is despite Applicants having filed meritorious applications which the PTO Examining Attorneys

---

[1] In the reply Green Planet suspects Defendant may apprise the court of its recent, successful appeal in *Innovation Ventures LLC v. N.V.E., Inc.* 694 F.3d 723 (6th Cir., Sep. 13, 2012) in which a summary judgment against Innovation Ventures was reversed, the court finding although more of the likelihood-of-confusion factors favored no confusion between 5-hour ENERGY and 6 Hour POWER, that enough factual issues remained for there to be a trial. Lauson Decl., para. 5.

 

Note the high degree of similarity in the shape of the bottles between 5 Hour ENERGY and 6 Hour POWER. Accordingly, Green Planet, with its very different pouch packages, believes it has a better legal position. In comparing marks in a likelihood-of-confusion analysis, it is the overall commercial impression including the packaging and the setting in which they are used. *Nabisco v. Warner –Lambert*, 220 F.3d 43, 47 (2d Cir. 2000) ("Our inquiry does not end with a comparison of the marks themselves. Rather, in determining whether two marks are confusingly similar, we must appraise the overall impression created by the context in which they are found and consider the totality of factors that could cause confusion among prospective purchase.").

The appeals court also found 5 HOUR ENERGY was suggestive rather than descriptive. For Defendant to allege that Green Planet's 8 HR BUZZ is merely descriptive as they did in the PTO opposition is an allegation not made in good faith.

approved, who are experts at applying U.S. trademark law. During the 30 day opposition period the Defendant comes along and challenges the applications claiming they should not have been approved. According to Defendant, the Examiners continuously reached incorrect conclusion as evidenced by at least 19 oppositions filed by Defendant. For example, Defendant contends that "The 4-Hour," "Energy By The Hour," i-energy," "8 Hour Alert," "Defender Energy Bar," "American Life," "10 Hr G," "Drive 7-Hour Energy Shot," "DaySlim 5 Hour Appetite Suppressant," "8 Hour Power Pack," "7 Hour Down," "Up To 6 Hour Energy," "5 Hour Lift," "6 Hour Power!" and "5-Alarm Energy" are all likely to be confused with its 5 HOUR ENERGY marks. Lauson Decl., para. 5, Exs. D, E.

Filing these frivolous oppositions is part of Defendant's business strategy to suppress competition, using the threat of expensive legal proceedings against competitors who dare compete in the energy drink business. Anyone who uses a number, or anything resembling the words "hour" or "energy" on their label to describe or suggest their energy drink-related goods, and applies for a trademark is subject to Defendant's wrath. In reply Defendant may contend that these were intent-to -use applications and could not be sued on, but several were use-based and Green Planet believes several others were in use.

As Defendant points out, Plaintiff's complaint made reference to multiple lawsuits. Moving Mem. at page 6, lines 22-24. While there are a few trademark lawsuits, e.g., related to counterfeiting, where possible Defendant primarily uses the PTO to unlawfully interfere with others attempting to sell energy drinks.

**IV.   Green Planet Files This Action; Defendant Opposes, Files in Michigan**

Despite perceiving Defendant's trademark and trade dress claims as frivolous, but knowing the uncertainty associated with any litigation, Green Planet was concerned as to the risk of accruing damages as it continued to sell its 8 HR BUZZ product. Defendant's letter invites negotiations, but Green Planet did not

1   want to change its product name and no suitable compromise was evident.  While

2   Defendant's letter aggressively asserted its rights, nowhere did it say Defendant

3   intended to sue Green Planet in any particular court.   Given the TTAB extension

4   and Defendant's letter expressing awareness of the trademark application, that the

5   14 day deadline ended five (5) days before the opposition deadline, and

6   Defendant's past history of filing multiple frivolous actions there, Green Planet

7   fully expected Defendant would file an opposition.  Green Planet was concerned the

8   opposition would be a lengthy proceeding, would not address all the issues (only

9   the word mark would be relevant, not Green Planet's packaging said to violate

10  Defendant's trade dress), and any findings at the TTAB would not be binding on

11  the federal courts.   Also, courts find the opposition counts as notice of the

12  Opposer's likelihood-of-confusion claim, which prevents delay-based defenses

13  such as laches from being asserted against s future infringement charge in federal

14  court.  *Champagne Louis Roederer v. J. Garcia Carriom, S.A.*, 569 F.3d 855(8th

15  Cir. 2009).

16      Accordingly, not wanting to face such prolonged uncertainty, on Thursday

17  August 29, 2013 Green Planet filed this action seeking a declaratory judgment of

18  trademark and trade dress non-infringement, and immediately served the complaint

19  on Tuesday September 3rd (after the Labor Day holiday on Monday).  *See* Notice

20  of Proof of Service, Filed Sep. 6, 2013 [Doc. No. 9].  Doing nothing would have

21  delayed resolution of the dispute and likely interfered with Green Planet's sale and

22  distribution of the product, e.g., distributors and customers not wanting to carry it

23  given Defendant's infringement allegations.

24      As expected, on September 4th Defendant filed the Notice of Opposition at

25  the TTAB.  Lauson Decl., para. 6, Ex. F.  The opposition not only asserts that

26  Green Planet's 8 HR BUZZ word mark should not be registered because of a

27  likelihood-of-confusion (the standard for trademark infringement), but also dilution

28  by blurring (that Opposer owns a famous mark and its distinctive ability will be

diminished by the Applicant's mark).  The dilution claim is *extra* frivolous because for dilution to apply, the marks must be nearly identical, that appreciable numbers of customers see the two marks as essentially the same.  J. McCarthy, MCCARTHY ON TRADEMARKS, § 24:117. (citing *Luigino's, Inc v. Stouffer Corp*., 170 F.3d 827 (8th Cir. 1999) (holding that LEAN CUISINE was not similar enough to LEAN 'N TASTY for dilution to occur)); *see also Mead Data Central, Inc v. Toyota Motor Sales, USA Inc*., 875 F.2d 1026, 1028 (LEXIS for attorney legal services not likely to be diluted by LEXUS for automobiles; "We hold only that the marks must be 'very' or 'substantially' similar and that, absent such similarity, there can be no viable claim of dilution.").  8 HR BUZZ is not similar enough to 5 HOUR ENERGY to support a dilution claim.  Defendant also asserts in the opposition that Green Planet's 8 HR BUZZ mark is merely descriptive (or deceptively misdescriptive).

On September 6, 2013, Green Planet filed a motion to suspend the opposition proceeding pending determination of this civil action.  Lauson Decl., para. 7, Ex. G. Also, on September 6th Green Planet amended the complaint in this action to add additional Counts 2 and 3 requesting declaratory judgments of no dilution and no invalidity based on mere descriptiveness of the mark.  *Id*., para. 7.

It was not until September 17, 2013 that Defendant filed its complaint in Michigan, alleging trademark infringement, dilution, copyright infringement (over warning language being copied[2]), false designation of origin, common law trademark infringement, common law trade dress infringement, common law unfair competition, and the Michigan Consumer Protection Act.  *See* LeBeau Decl., para. 9, Ex. 2.

---

[2] Although Green Planet denies liability, it is phasing out use of the language at issue.

## V.   Applicable Case Law

A suit is "anticipatory" for the purposes of being an exception to the first-to-file rule if the plaintiff in the first-filed action filed suit on receipt of "specific, concrete indications that a suit by the Defendant was imminent." *Guthy-Renker Fitness LLC v. Icon Health & Fitness LLC*, 179 F.R.D. 264 (C.D. Cal. 1998) (emphasis added)[3] (citing *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994).  Courts adopt this approach because it prevents a declaratory d from abusing the first-to-file rule to engage in its own forum shopping, i.e., otherwise "each time a party sought a declaratory judgment in one forum, a Defendant filing a second suit in a forum more favorable to Defendant could always prevail under the anticipatory filing exception." *M.D. Beauty, Inc. v. Dennis F. Gross M.D.*, Case No. C03-3082 SBA, Order Granting Motion To Dismiss, Dkt. No. 20 (Lauson Decl., para. 10, Ex. J) (quoting *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 132 (S.D. N.Y. 1994)).

Whether Plaintiff's suit was anticipatory should be determined without regard to whether the first-filed suit was a declaratory judgment action.  *Abbott*

---

[3] Plaintiff's undersigned counsel was counsel-of-record for Guthy-Renker who prevailed in this Court against Icon's Motion to Dismiss claiming an anticipatory filing.  Defendant's personal attacks on Plaintiff and its counsel found in footnotes 1 and 2 of the moving memorandum are contrary to this Court's Civility and Professionalism Guidelines authored by Chief Judge George H. King:

> 8. Written Submissions to a Court, including Briefs, Memoranda . . . Unless directly and necessarily in issue, we will not disparage the intelligence, morals, integrity, or personal behavior of our adversaries before the court, either in written submissions or oral presentations. . . .We will not, absent good cause, attribute bad motives or improper conduct to other counsel or bring the profession into disrepute by unfounded accusations of impropriety.

Lauson Decl., para. 8, Ex. H.  Plaintiff's filing of a DJ action in 2012 and then the case settling hardly establishes a "pattern" of filing such actions as Defendant asserts.  *See* Moving Mem. at page 1, line 7, also page 10, line 24.  Moreover, Plaintiff's counsel's being a co-author of an educational article with a generalized discussion of cease-and-desist letter published in the Los Angeles County Bar's *LA Lawyer* magazine in 1999 is not at all relevant here, since motions of this type turn on the specific facts at issue ("Whether a filing is anticipatory so as to overcome the first-filed presumption is highly fact-dependent.").  *Oleg Cassini, Inc. v. Serta, Inc.* at page 4 (Lauson Decl., para. 9, Ex. I).

*Labs, Inc. v. Mead Johnson & Co.* 198 U.S. District LEXIS 12371, *9 (C2980157) (S.D. Ohio 1998) (opening that the considerations affecting transfer or dismissal in favor of another forum do not change simply because the first-filed action is a declaratory action) (citing *Genetech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931 (Fed. Cir. 1993); *800 Flowers Inc.*, 860 F. Supp. at 132)).

## VI.   There Was No Direct, Specific, Credible Threat Of Imminent Litigation

Reviewing the letter (Complaint and First-Amended Complaint, at Ex. A), Defendant's counsel never specifically threatened litigation, because Defendant never intended to sue Green Planet.  It only planned to initiate an administrative proceeding in the PTO, as it had done many times before in similar circumstances. Green Planet would have been left in legal limbo for years, which it sought to avoid.  Green Planet's filing was not in bad faith, not anticipatory and not for forum shopping.

Defendant is incorrect when it argues "Green Planet filed this action *solely* as a preemptive strike to avoid the natural plaintiff's choice of forum" and "[t]he *only* reason Green Planet filed its action in this court was to seize a California forum in anticipation that IIPH – the natural plaintiff whom Plaintiff knew was in Michigan – would sue it after expiration of the 14-day deadline in IIPH's Letter."  Moving Mem. at page 4, lines 27-28, and page 7 line 28 – page 8 line 3 (emphasis added). Green Planet acted in accordance with other considerations more important than the mere status of the case, that is, getting prompt and complete relief from Defendant's allegations and unlawful enforcement program.  Now that Defendant is not getting the trademark opposition it wanted, it is Defendant who is forum shopping and attempting to use the Court to take away Green Planet's first-filed action.

The *Xoxide, Inc. v. Ford Motor Co.*, 448 F. Supp. 2d 1186 (C.D. Cal. 2006) case cited by Defendant is inapposite.  Moving Mem. at page 11, 12.  In *Xiode*, Ford threatened litigation by a specific date: February 9, 2006, or "through

litigation wherein Ford will seek all available remedies against you" and "[i]n the event you fail to execute the Agreement and comply with its terms by February 9, 2006, Ford will commence litigation against you in order to obtain injunctive relief, damages, and an award of attorney's fees and costs to remedy your infringement and dilution of Ford's trademarks." *Id*.  Xiode timely responded denying liability but making certain concessions.  *Id*.  Ford's second letter reaffirmed its infringement contentions, and again threatened litigation:

> Ford's demands for the resolution of this matter are unchanged by your letter.  Please advise your client that this letter constitutes Ford's final attempt at  resolving this matter short of litigation.  If your client intends to comply with  Ford's requests, please . . . return an executed copy of the settlement [by] the  close of business on March 23, 2006.  Otherwise, Ford will have no choice  but to seek a judicial resolution of this matter.

*Id*.  Xoxide's March 23, 2013 second response offered partial compliance and requested 2-3 business days to further consider matter.  *Id*.  Then on April 3, 2006, Xoxide filed its declaratory judgment complaint but did not serve Ford.  Ford's final letter on April 27, 2006, before service of the complaint, informed Xoxide of its intent to file suit on May 11, 2006.  *Id*.  Xoxide's counsel responded, "[H]e did not believe that Ford would pursue this matter through litigation, **but just in case Ford decided to do so, he had filed a declaratory judgment lawsuit against Ford in California as insurance** in case Ford decided to sue his client in Michigan, "the forum of [Ford's] choosing."  *Id*.  (emphasis added in appellate court's opinion).  On May 16, 2013 Ford filed its infringement suit in Michigan.  *Id*.

The *Xoxide* facts demonstrate forum shopping and an anticipatory suit.  *Id*. Ford provided "specific, concrete indications that a suit by Ford was imminent."  *Id*.  (quoting *Guthy-Renker*, 179 F.R.D. at 271).  Xoxide's suit was simply a reaction to Ford's clear intent to file suit.  *Id*.  Xoxide's responded by secretly filing

1  the lawsuit in Los Angeles, and then sending the attorney letter openly indicating
2  the lawsuit was to preserve the local forum, or "keep our place as to filing dates and
3  time." *Id*.[4]

4      As discussed above, the facts are different here.  There was no specific, direct
5  threat of litigation, and surrounding circumstances, all the frivolous TTAB activity,
6  indicated no litigation was coming.   The suit was not a secret; Green Planet
7  immediately served it.   Green Planet wanted to best protect its interests by having
8  this Court declare its rights as to all of Defendant's allegations.

9

10           **VII.   The California Action Can Resolve All The Issues**

11      The opposition could not possibly resolve all the issues, in particular the
12  trade dress infringement claim, because Green Planet had not applied to register its
13  trade dress so it cannot be at issue.  Green Planet sought prompt adjudication of all
14  the issues between the parties in a forum where that was possible, this Court.  Upon
15  Defendant asserting additional issues not raised in its cease-and-desist letter,
16  dilution and invalidity (mere descriptiveness or deceptive mis-descriptiveness),
17  Green Planet promptly amended the complaint to seek declaratory relief as to these
18  additional allegations.

19      Now that Defendant in Michigan has asserted additional counts, various
20  claims related to a likelihood-of-confusion, the dilution claim and the copyright
21  claim, all highly related, Green Planet intends to seek leave for a second
22  amendment to request declaratory relief as to same.  Green Planet will also add
23  related entity Innovation Ventures, LLC as a party.  Apparently International IP
24  Holdings owns the intellectual property, whereas Innovation Ventures is a licensee.
25  Defendants can then file all its compulsory counterclaims in this Court, and the

26  _____
27  [4] Interestingly, the attorney for *Xoxide* was David Hoffman, co-author with the undersigned of the
"Cease-and-Desist Letters in Intellectual Property Disputes" 1999 LA Lawyer article which
Defendant's attorneys criticize in the moving papers at footnote 2.  Attorney Hoffman was also
28  counsel-of-record along with the undersigned in the *Guthy Renker v. Icon* case, *supra*.

1    Michigan action will be dismissed as duplicative.

2    **VIII.  The Michigan Litigation Was Not Imminent**

3    The period of time between filing of the first and second suits can be

4 circumstantial evidence that the second suit was not really imminent, or seriously

5 contemplated, or that it may not have been filed at all except as a response to the

6 first. *Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002 (8th Cir.

7 1993) ("And yet another six weeks after that before American filed its suit in Texas,

8 from which one might infer that American's lawsuit was not truly contemplated

9 until after Northwest had filed its action.").

10    Here, after Green Planet filed August 29th in Los Angeles and immediately

11 served the summons and complaint, it was not until September 17th that

12 Defendant's filed their case in Michigan, nearly 3 weeks later.   The delay is

13 evidence that the Michigan suit was not imminent, but rather reactionary to Green

14 Planet's lawsuit.  That is, Defendant, pointing fingers at Green Planet, is actually

15 engaging in its own forum shopping.

16

17    **IX.   Defendant Failed To Meet Its Burden For A Convenience Transfer**

18    Defendant urges this Court to exercise its discretion pursuant to §1404(a) to

19 transfer this action to the Eastern District of Michigan, asserting that venue is

20 inconvenient in the Central District of California.   Under §1404(a), a case may be

21 transferred "[f]or the convenience of parties and witnesses, in the interest of justice

22 . . . ." To prevail on its motion to transfer venue, Defendant has the burden of

23 demonstrating that a change of venue is warranted. *Decker Coal Co. v.*

24 *Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (A party seeking

25 transfer must make "a strong showing . . . to warrant upsetting the plaintiff's choice

26 of forum."); *E&J Gallo Winery v. F&P S.p.A.*, 899 F. Supp. 465, 466 (E.D. Cal.

27 1994) (stating that Defendant bears a "heavy burden of showing a clear balance of

28 inconveniences to it.").

1    Defendant argues that it would be more convenient for it to have this action
2    tried in the Eastern District of Michigan.  A transfer will not be ordered simply to
3    make it more convenient for the Defendant, however.  *See Reed Elsevier, Inc. v.*
4    *Innovator Corp.*, 105 F. Supp. 2d 816, 821 (S.D. Ohio 2000) ("The venue transfer
5    provisions of Section 1404(a) are not meant to merely shift the inconvenience to the
6    plaintiff.") (internal citations omitted). The inconvenience to the Defendant must
7    overcome the significant weight normally given to the plaintiff's choice of
8    forum in transfer proceedings.  *See Gulf Oil Corporation v. Gilbert*, 330 U.S. 501,
9    508 (1947) ("Unless the balance is strongly in favor of the Defendant, the plaintiff's
10   choice of forum should rarely be disturbed").   A Plaintiffs choice of forum is rarely
11   upset, unless Defendant makes a strong showing of inconvenience. *California*
12   *Writer's Club, v. Sonders*, 2011 U.S. Dist. LEXIS 113699 at *29, (citing the Ninth
13   Circuit's decision in *Decker Coal Co.*, 805 F.2d at 843)).

14   Defendant has not made such a clear showing that Michigan is far more
15   convenient than California.  Defendant has substantial, continuous and systematic
16   ties with California.   Scott Decl., para. 9 ("As the best known liquid energy shot,
17   the 5-HOUR ENERGY products are sold in over 100,000 locations *throughout the*
18   *United States*.") (emphasis added).   Defendant has chosen to do business here,
19   including sending the letter at issue to Plaintiff and its counsel located in this
20   district.  Defendant presents no testimony that it is unable to participate in litigation
21   in Los Angeles, nor does it set forth any particular hardship it would suffer in so
22   doing.  Any burden on Defendant to defend itself against Green Planet's claims for
23   relief in the Central District of California is minor. Travel to the Central District is
24   not overly burdensome or inexpensive, non-stop flights being available from
25   Detroit.  This Court is likely willing to allow Defendant to appear by telephone if
26   desired at many hearings the Court may hold.   California has an interest in
27   adjudicating this dispute as its resident corporation Green planet is being attacked
28   by a large Michigan-based business.

1  Defendant argues that the convenience of witnesses demonstrates the need to

2  transfer this matter.  Convenience of witnesses is a factor the Court should typically

3  consider in determining whether to transfer under § 1404(a).  *See Los Angeles*

4  *Memorial Coliseum Comm'n v. National Football League*, 89 F.R.D. 497, 501

5  (C.D. Cal. 1981) ("The convenience of witnesses is said to be the most important

6  factor in passing on a transfer motion.").  "[W]hen asserting that a transferee district

7  is more convenient for witnesses, a [Defendant] 'must produce evidence regarding

8  the precise details of the inconvenience' of the forum chosen by the plaintiff.  *B.E.*

9  *Technology, LLC, v. Facebook, Inc.*, 2013 U.S. Dist. LEXIS 97490 at *10 (quoting

10  *Esperson v. Trugreen Ltd.*, 2010 U.S. Dist. LEXIS 114500, 2010 WL 4362794, at

11  *8 (W.D. Tenn. 2010)). The party asserting witness inconvenience must proffer

12  evidence of who the inconvenienced witnesses are and of their potential testimony

13  to enable a court to assess the materiality of evidence and the degree of

14  inconvenience.  *E&J Gallo Winery*, 899 F. Supp. at 466 (stating that defendant

15  must identify key witnesses and describe anticipated testimony). To satisfy its

16  burden, the movant must do "more than simply assert [] that another forum would

17  be more appropriate for the witnesses; he must show that the witnesses will not

18  attend or will be severely inconvenienced if the case proceeds in the forum district."

19  *Roberts Metals, Inc. v. Florida Props. Mktg. Grp., Inc.*, 138 F.R.D. 89, 93 (N.D.

20  Ohio 1991); *see also Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d

21  1086, 1093 (N.D. Cal. 2002) ("The party seeking a transfer cannot rely on vague

22  generalizations as to the convenience factors.").

23  Defendant clearly has not met its burden here. The only "evidence" offered

24  by Defendant is the declaration of Scott Henderson.  Henderson does not identify

25  any witnesses who would be inconvenienced, nor the testimony that they are likely

26  to have relevant to this case.  Henderson does not explain that any of these

27  witnesses are unable to attend a trial in Southern California.  Indeed, the only

28  persons he mentions are unnamed "witness based evidence." Henderson Decl.,

- 14 -

para. 11.  Obviously, Defendant can compel its employees to attend trial.  Courts properly discount claims of inconvenience to witnesses that are employees of the defendant.  *Tamashiro v. Harvey*, 487 F. Supp. 2d 1162, 1171 (D. Haw. 2006); *see also Azarm v. $1.00 Stores Servs. Inc.*, 2009 U.S. Dist. LEXIS 47179 at * 13 (M.D. Tenn. 2009) ("[I]t is generally presumed that party witnesses will appear voluntarily in either jurisdiction. . . ."). Thus, the convenience of witnesses who are employees has little, if any, weight.  *See Zimmer Enters. v. Atlandia Imps., Inc.*, 478 F. Supp. 2d 983, 991 (S.D. Ohio 2007).

Additionally, Mr. Henderson does not identify any inconvenience that any witness would suffer in attending trial in the Central District.  Recently, a district court in Tennessee denied a motion to transfer a patent infringement case to this District when "Facebook d[id] not provide any evidence showing that any of its employees w[ould] be unwilling to testify in [the Western District of Tennessee] if asked to do so or how such employees w[ould] be 'severely inconvenienced' if the case proceed[ed] in th[at] district." *B.E. Technology, LLC, v. Facebook, Inc.*, 2013 U.S. Dist. LEXIS 97490 at *14 (citation omitted).  This Court should likewise deny Defendant's transfer motion.  On balance, the convenience of witnesses weighs in favor of keeping this action in this District.  All of Green Planet's employees reside in this district— none reside in Michigan.

In analyzing the "interests of justice" under section 1404(a), courts in the Ninth Circuit consider a number of factors, including: "(1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses'; and (8) the ease of access to sources of proof." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000); *see also Davis v. Social*

1   *Serv. Coordinators*, 2013 U.S. Dist. LEXIS 118414, *5-6 (E. D. Cal. 2013).

2       Here, Green Planet's claims for declaratory relief do not arise out of  any

3   agreement with Defendant, so the first factor, the location where the relevant

4   agreements were negotiated and executed, is therefore neutral.  The second factor,

5   the state that is most familiar with the governing law, is also neutral, because the

6   legal issues in this case nearly all arise under federal law.  Any state law claims are

7   based on the same likelihood-of-confusion standard.   Green Planet's choice of

8   forum is accorded great deference in the section 1404(a) analysis, as discussed

9   above, and so the third factor weighs heavily in favor of maintaining this action in

10  this district.  The fourth and fifth factors, the parties' contacts with the forum and

11  the contacts relating to the plaintiff's cause of action in the chosen forum, disfavor

12  transfer.  Defendant does much business in California, its entire business involving

13  5 HOUR ENERGY drinks which are at issue in this case.  Green Planet is a much

14  smaller company that primarily does business in California and only does limited

15  business in Michigan, much of which involves other products that have nothing to

16  do with this case.  The sixth factor, the difference in costs of litigation in the two

17  forums, is likely neutral.   Green Planet submits that this district can efficiently

18  handle this case.  The compulsory processes available to compel attendance of

19  unwilling non-party witnesses are the same in the C.D. Cal. and E.D. Mich districts,

20  making the seventh factor neutral.  Similarly the eighth factor, ease of access to

21  proof, is likely neutral.

22      Although Mr. Henderson testifies that Defendant's documents are located in

23  the Eastern District of Michigan, he fails to identify any specific relevant evidence

24  that might be located in that District. Henderson Decl., para 11 ("[G]eneral

25  statements [referring to documents] fail to show that transfer would make access to

26  sources of proof either more or less convenient for the parties.").  *Invitrogen Corp.*

27  *v. GE*, 2009 U.S. Dist. LEXIS 9127, at *8 (E.D. Tex. 2009); *see also Allstar*

28  *Marketing Group v .Your Store Online, LLC*, 666 F. Supp. 2d at 1133 (finding this

factor neutral "at best" where Defendants proffered no evidence regarding the size or nature of its records located outside of the forum). General allegations that transfer is needed because of the ease of obtaining records and books is insufficient. *DeFazio v. Hollister Employee Share Ownership Trust*, 406 F. Supp. 2d 1085, 1091 (E.D. Cal. 2005) (citing C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE, §§ 3853-54, at 438). In *California Writer's Club, v. Sonders,* the court denied a motion to transfer a case to the Central District of California where the Defendant "stat[ed] that relevant documents are located in the Central District, [but] failed to explain their importance and how he might suffer any hardship by having to move these documents to the Central District." 2011 U.S. Dist. LEXIS 113699, at *42-43. Defendant's transfer motion should be denied for the same lack of adequate showing.   If Defendant attempts to submit additional evidence supporting its transfer in any reply, such new evidence should not be considered.

## X.    Conclusion

Green Planet's declaratory judgment complaint was not in bad faith, an anticipatory filing only for forum shopping as per Defendant's characterization. It was to enable a complete and timely adjudication of what Green Planet sees as frivolous trademark claims.  Defendant did not intend to sue Green Planet at all, preferring to stay in the PTO where it has less downside risk for bringing frivolous claims, and can best use its size advantage on small competitors such as Green Planet.   Once Defendant's letter gets a closer reading, and the surrounding circumstances are explored, it becomes apparent Defendant's motion is the forum shopping and should be denied.  And the motion to transfer denied as well, given Defendant's motion falls far short of the showing necessary to justify moving the case.

1

2   DATED:  October 7, 2013          Respectfully Submitted,

3                                   LAUSON & TARVER, LLP

4

5                                   By:_____/s/_____

6                                        Robert J. Lauson, Esq.
                                         Attorney for Plaintiff,
7                                        GREEN PLANET, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28